Matter of Amber EE. v Kalam EE. (2025 NY Slip Op 04943)

Matter of Amber EE. v Kalam EE.

2025 NY Slip Op 04943

Decided on September 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 11, 2025

CV-23-2432
[*1]In the Matter of Amber EE., Respondent,
v
Kalam EE., Appellant. (Proceeding No. 1.)
In the Matter of Amber EE., Respondent,
v
Kalam EE., Appellant. (Proceeding No. 2.) (And Another Related Proceeding.)

Calendar Date:August 14, 2025

Before:Lynch, J.P., Ceresia, Fisher, Powers and Mackey, JJ.

Lisa K. Miller, McGraw, for appellant.
Andrea J. Mooney, Ithaca, for respondent.
Joan E. Mencel, Endwell, attorney for the children.

Powers, J.
Appeals (1) from an order of the Family Court of Tioga County (Adam Schumacher, J.), entered November 16, 2023, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation, and (2) from an order of said court, entered November 16, 2023, which granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 8, for an order of protection.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject children (born in 2014 and 2017). Pursuant to a December 2022 order, the parents shared joint legal custody of the children, with the mother having primary physical custody and the father having parenting time every Wednesday night and every other weekend. During this time, an order of protection, set to expire in May 2023, required the father to stay away from the mother and only communicate with her by means of the "Talking Parents" application on issues regarding the children.
In January 2023, only two weeks after entry of the prior order, there was an incident during the exchange of the children from the father to the mother which culminated in law enforcement being called and the children remaining with the father during the mother's custodial time. According to the father, the children wished to remain with him and law enforcement would not enforce the mother's custodial time. As a result, the mother filed a combined modification and violation petition requesting sole custody of the children and to extend the order of protection to also benefit the children when leaving the father's vehicle during custodial exchanges. After entry of a temporary order granting the mother sole legal custody and primary physical custody, she filed a separate family offense petition seeking to adjudge the father to have committed the family offense of harassment and to extend the order of protection as previously requested. In response, the father filed a petition to enforce the custody order.
A fact-finding hearing was held, after which Family Court issued a decision finding that the parents' inability to communicate and the father's growing hostility toward the mother established the necessary change in circumstances and, as such, determined that granting sole legal custody to the mother was in the best interests of the children. The court also found the father to have violated the prior custody order and mandated that the father pay a portion of the mother's counsel fees as a fine for this violation. Finally, the court found the father to have also violated the order of protection that had been in effect at the time for the benefit of the mother and, flowing from this violation, had committed a family offense against her. Based upon this decision, the court entered a custody order and a separate order of protection, which was set to expire in November 2024, and extended the stay-away order [*2]of protection to the children while in the mother's care. The father appeals from both the custody order and the order of protection.
"A party seeking to modify a prior order of custody must show that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child[ren] would be served by a modification of that order" (Matter of Ashley UU. v Ned VV., 235 AD3d 1200, 1201 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Christine EE. v David FF., 235 AD3d 1156, 1157 [3d Dept 2025]). Despite the brief duration between entry of the prior custody order and filing of the instant modification petition just two weeks later, we find such a change. The record demonstrates "a clear breakdown in the parents' relationship such that their ability to communicate for their children's well-being was hindered," as evidenced by law enforcement being called on multiple occasions in that period to assist in effectuating exchanges of the children (Ricky SS. v Christine SS., ___ AD3d ___, ___, 2025 NY Slip Op 04602, *2 [3d Dept 2025]; see Matter of Kelly AA. v Christopher AA., 240 AD3d 1011, 1013 [3d Dept 2025]). We thus turn to whether modification of the prior order was in the best interests of the children.
"In determining whether modification of a prior custody order will serve the best interests of the child[ren], courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child[ren]'s [lives], each parent's willingness to promote a positive relationship between the child[ren] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[ren]'s intellectual and emotional development and overall well-being" (Matter of Michael M. v Makiko M., 238 AD3d 1304, 1306 [3d Dept 2025] [internal quotations marks and citations omitted]; see Matter of Michelle EE. v John EE., 235 AD3d 1121, 1123 [3d Dept 2025]). "This Court accords great deference to Family Court's factual findings and credibility determinations and will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1076 [3d Dept 2024] [internal quotation marks, ellipsis and citations omitted]; see Matter of Matthew L. v Sierra N., 229 AD3d 866, 868 [3d Dept 2024], lv denied 42 NY3d 907 [2024]).
The record demonstrates that both the mother and the father are loving, fit parents. Nevertheless, Family Court's determination to grant the mother sole legal custody is supported by the record. The parents' proven inability to effectively communicate regarding the children and the continued difficulty in exchanging the children provide a sound and substantial basis for the determination that joint legal custody is no longer workable and, moreover, that it was in the best interests of the children to award [*3]sole legal and primary physical custody to the mother with specified parenting time to the father on the condition that the exchanges be prompt and limited to "brief goodbyes" (see Matter of Ellen TT. v Parvaz UU., 178 AD3d 1294, 1296 [3d Dept 2019], lv denied 35 NY3d 905 [2020]; Matter of Ryan XX. v Sarah YY., 175 AD3d 1623, 1625 [3d Dept 2019]; Matter of Dorsey v De'Loache, 150 AD3d 1420, 1422-1423 [3d Dept 2017]).
The father next asserts that Family Court erred in finding that he had violated the prior custody order which had incorporated a "Children's Bill of Rights" containing, among other things, a provision barring the use of the children as a messenger between the parents. "A party seeking a finding of civil contempt based upon the violation of a court order must establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Matter of Ashley UU. v Ned VV., 235 AD3d at 1202-1203 [internal quotation marks, brackets and citations omitted]; see Matter of John EE. v Jalyssa GG., 222 AD3d 1219, 1222-1223 [3d Dept 2023]).
As stated briefly above, the prior custody order incorporated a "Children's Bill of Rights," which mandated that the "[t]he child[ren] ha[ve] the right to not be asked to carry messages between parents" and "[t]he child[ren] ha[ve] the right to be protected from parental 'warfare.' " The custody order further conditioned that "both parties will ensure that there is no fighting or disparaging remarks made by anyone in the presence of the children" and that "the parties will communicate, solely, through the 'Talking Parents' application an[d] will make a good faith effort to respond promptly to the other parties' communications." The father does not claim that he was unaware of these relevant provisions.
In January 2023, the father messaged the mother through the approved communication application asking that she return one of the children's jackets that he and his wife had purchased but was accidentally left in the mother's possession. The father specifically requested that the mother bring the jacket to the exchange of the children, which was to occur that night, and the mother responded that she was unable to do so because the jacket was in the washing machine. Despite this, during the exchange, the older child went from the father's vehicle to the mother's and asked the mother if she had brought the jacket. The mother informed the older child that she had not brought the jacket, the child then returned to the father and the father yelled across the parking lot to the mother regarding this jacket. The mother testified that she believed the older child did this at the father's urging. On the other hand, the father claimed that the older child asked him if she could do so of her own volition and, in response, he told her that her doing so would [*4]be "helpful."
Despite what may have precipitated her to ask the mother, it is evident that the older child did carry a message from the father to the mother and was, therefore, used as a messenger in contravention of the custody order. A situation which, considering that the mother had already informed the father that she did not have the jacket with her, could have been easily avoided had the father instructed the older child not to do so. This exchange then quickly devolved, law enforcement was called, and the children were not returned to the mother that night as required pursuant to the prior custody order. This precipitated another exchange later in the week during which the father, in the vicinity of the children, was overheard saying that the mother was a liar. Deferring to Family Court's decision to credit the testimony provided by the mother, we do not find that the court abused its discretion in finding the father to have violated the prior order (see Matter of Samantha E. v Nicholas F., 233 AD3d 1295, 1299-1300 [3d Dept 2024]; Matter of Michelle L. v Steven M., 227 AD3d 1159, 1164 [3d Dept 2024]).
Accordingly, we move on to the father's related assertion that Family Court erred in granting the mother's request for counsel fees. "Where, as here, no actual loss or injury was sustained, Judiciary Law § 773 permits that a fine may be imposed, not exceeding the amount of the complainant's costs and expenses, and $250 in addition thereto" (Matter of Khan v Khan, 140 AD3d 1252, 1254-1255 [3d Dept 2016] [internal quotation marks, brackets and citation omitted]; see Matter of Paul A. v Shaundell LL., 117 AD3d 1346, 1348 [3d Dept 2014], lv dismissed & denied 24 NY3d 937 [2014]). Thus, relevant thereto, a fine may include the imposition of counsel fees (see Matter of Khan v Khan, 140 AD3d at 1255; Vider v Vider, 85 AD3d 906, 908 [2d Dept 2011]). Accordingly, the court was within its authority to award counsel fees to the mother related to the litigation of the violation petition.
Finally, the father maintains that Family Court erred in granting the mother's family offense petition and, as a result, extending the order of protection that had previously been in place.[FN1] Relevantly, the order of protection in effect during the relevant period required, among other things, that the father stay away from the mother, her home and her place of employment, to refrain from communication by any means other than the approved communication application and to refrain from any harassment of the mother.
In the context of "a family offense proceeding, the petitioner bears the burden of proving by a fair preponderance of the evidence that the respondent committed one of the family offenses enumerated within Family Ct Act § 821 (1) (a)" (Matter of Samah DD. v Mark VV., 235 AD3d 1116, 1117 [3d Dept 2025] [internal quotation marks, brackets and citation omitted]; see Family Ct Act § 832). As alleged in the petition, harassment in the second degree is one of the family [*5]offenses enumerated in Family Ct Act § 821 (1) (a) and "requires proof that an individual 'with intent to harass, annoy or alarm another person . . . engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose' " (Matter of Marianna K. v David K., 145 AD3d 1361, 1362 [3d Dept 2016], quoting Penal Law § 240.26 [3]).
Deferring to Family Court's credibility determinations in this respect (see Matter of Samah DD. v Mark VV., 235 AD3d at 1117-1118; Matter of Erica II. v Jorge JJ., 165 AD3d 1390, 1392 [3d Dept 2018]), we find that the preponderance of the evidence supports that the father committed the family offense of harassment in the second degree. Initially, the court described that the father and the father's wife were unable to answer questions directly and without adding self-serving commentary; consequently, the court elected to credit the mother's testimony. It, therefore, credited the mother's testimony that the father and the father's wife had contacted Child Protective Services on multiple occasions with allegations regarding the children that were determined to be unfounded. The court found that the father had sent the mother lengthy and repetitive messages regarding the aforementioned jacket and then, even though the mother communicated that she would be unable to bring the jacket to the exchange, used the older child as a messenger to ascertain the whereabouts of this jacket. The father exacerbated the situation by insisting on speaking with the mother directly in person, in violation of the order of protection, which upset the children and eventually resulted in the exchange being unsuccessful. In addition, the court credited that the father had called the mother a liar in the vicinity of the children during a subsequent exchange. The foregoing evidence, as credited by Family Court, demonstrates that the father had engaged in a course of conduct which alarmed or seriously annoyed the mother while serving no legitimate purpose, thereby committing the family offense of harassment in the second degree (see Matter of Pauline DD. v Dawn DD., 212 AD3d 1039, 1042-1043 [3d Dept 2023], lv denied 39 NY3d 915 [2023]; Matter of Erica II. v Jorge JJ., 165 AD3d at 1392).
The father's remaining contentions, including his claim that his counsel and the attorney for the children at trial did not provide meaningful representation, have been reviewed and found to be lacking in merit.
Lynch, J.P., Ceresia, Fisher and Mackey, JJ., concur.
ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: While the father's appeal from the order of protection is not moot due to the enduring consequences of the adjudication that he had committed a family offense (see Matter of Smith v Morrison, 196 AD3d 772, 773 n [3d Dept 2021]), his specific argument that Family Court erred in extending the order of protection to include the children while in the care of the mother is moot inasmuch as the order of protection has expired by its own terms (see Matter of Tina X. v Thomas Y., 233 AD3d 1272, 1276-1277 [3d Dept 2024]; Matter of Jacob L. v Heather L., 228 AD3d 1191, 1192 n [3d Dept 2024]).